IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| JOSEPHINA VALLADARES,<br>    Next Friend of<br>    James Valladares<br>        v.<br>VICTOR CORDERO,<br>    Defendant. | )<br>)<br>)<br>)<br>)     1:06cv1378(JCC)<br>)<br>)<br>) |

## **M E M O R A N D U M   O P I N I O N**

Plaintiff Josephina Valladares filed this action on behalf of her son, James Valladares ("James"), pursuant to 42 U.S.C. § 1983, alleging that Defendant Officer Victor Cordero ("Cordero") violated his constitutional rights by using excessive force while arresting him.[1]  Plaintiff also alleges claims of battery and negligence under Virginia law.  On January 5, 2007, Defendant filed a Motion to Dismiss or, in the alternative, Motion for Summary Judgment.  This motion is currently before the Court.  For the reasons that follow, the Court will deny Defendant's motion.

---

[1] To avoid confusion between Boris and James Valladares, the Court will refer to them by their first names.

1

## I. Background[2]

On Friday, December 8, 2005 at approximately 8:00 p.m., Officers Victor Cordero ("Cordero") and Anthony Notarantonio ("Notarantonio") of Prince William County Police Department responded to a report of a domestic disturbance at 9414 Chatham Street in Manassas, Virginia.  Officer Cordero arrived first and met with Plaintiff Josephina Valladares and her son, Boris Valladares ("Boris").  Boris appeared to be heavily intoxicated and was arguing loudly with his mother.  Officer Cordero allowed the situation to resolve without his involvement, and as he began to leave, Officer Nontarantonio arrived.  The officers talked briefly and walked out of the house.

Once outside the house, the officers noticed Plaintiff's younger son, James, leaning against a car in the driveway.  James was 15-years-old, approximately 5'3" tall, and 130 lbs.  The officers addressed James to discover his identity and determine whether he had any involvement in the domestic encounter.  Suddenly, Boris came out of the house and began yelling.

In response to Boris's disorderly conduct after emerging from the house, Officer Notarantonio approached Boris

---

[2] The facts recited here are derived from the Complaint; Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment; Plaintiff's opposition to Defendant's Motion; and supporting documentation.  Where in dispute, the facts are construed in favor of Plaintiff. *See Porter v. United States Alumoweld Co.*, 125 F.3d 243, 245 (4th Cir. 1997).

and a scuffle ensued.  Notarantonio, with Cordero's aid, attempted to place Boris under arrest for public intoxication.  Boris fought the attempts of both officers to handcuff him, thereby resisting arrest.[3]  James observed that his brother was bleeding from his head striking the concrete, and that both officers were still on top of him.  At this moment, James approached the scuffle and tried to push Officer Cordero off his brother.  Cordero, at approximately 6'2" and 250 pounds, turned to the 15-year-old, 130-pound boy and "slammed" his head into an adjacent vehicle in an attempt to subdue him.  James went "limp" and ceased fighting.  Nevertheless, Cordero slammed the boy's head into the car two more times, causing the boy to fall to the ground.  Cordero picked James up from the ground and slammed him headfirst into the car two final times.[4]  With Plaintiff now subdued, Cordero administered a taser stun to Boris, who was then handcuffed.  An ambulance soon arrived and took Plaintiff to the hospital, where a medical doctor confirmed that Plaintiff's jaw was broken.

On December 7, 2006, Plaintiff filed a Complaint in this Court alleging a violation of constitutional rights by using excessive force pursuant to 42 U.S.C. § 1983.  Plaintiff also

---

[3] At this point of the altercation, the accounts of the parties are materially disputed.

[4] Officer Cordero disputes this claim and asserts that Plaintiff continued to fight with Cordero, and that he "pulled" James along the vehicle.

alleges state law tort claims of battery and negligence. As relief, Plaintiff seeks $100,000 in compensatory damages and $300,000 in punitive damages.

## II. Standard of Review

Summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Applications & Serv., Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996)(citations omitted). In reviewing the record on summary judgment, the Court is required to resolve all genuine disputes as to any material facts in favor of Plaintiff, the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## III. Analysis

A.  Excessive Force in violation of the Fourth Amendment

Plaintiff alleges that Officer Cordero used excessive force in violation of his constitutional rights during the course of his arrest. The Supreme Court has held that "*all* claims that law enforcement officers have used excessive force - deadly or not - in the course of an arrest . . . should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989)(emphasis in original). The determination of whether the use of force was "reasonable" under

4

the Fourth Amendment depends upon the facts and circumstances of the individual case. *Graham*, 490 U.S. at 396. When determining reasonableness, the Court is to assess the facts and circumstances from the perspective of a reasonable officer on the scene faced with similar facts and circumstances. *Terry v. Ohio*, 392 U.S. 1, 22-27 (1968).

The facts surrounding the altercation are heavily disputed,[5] and when passing upon a motion for summary judgment, this Court is required to resolve these genuine disputes in favor of Plaintiff, the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). It is through this disputed lens that the Court must assess the instant motion.

The Court will briefly reiterate the essential facts out of which the claims arise: First, James attempted to push Officer Cordero away from his brother during Cordero's attempt to arrest him. In response, Defendant, a 250-pound adult, slammed the head of the 15-year-old, 130-pound boy into a car. James ceased any struggle, and Defendant subsequently slammed his head into the car two more times. James fell to the ground, and

---

[5] The affidavits submitted to the Court not unexpectedly portray two widely differing versions of the material facts that give rise to this lawsuit. In short, James claims that he only attempted to push Cordero off his brother, and that he ceased any struggle after being slammed into the car once. (Valladares Decl., 2-3). To the contrary, Officer Cordero states that, while restraining Boris on the ground, he felt as if he was being struck with "fists or a 2x4." Next, James "bumped" against a truck and then "slid along one of the vehicles." (Cordero Decl., 3). Regardless of which account is more accurate, it is undisputed that Plaintiff's jaw was broken from contact with the vehicle.

Officer Cordero picked him up, and slammed his head into the car twice more, breaking his jaw.

Viewing these facts from the perspective of a officer on the scene, this Court concludes that a jury could find Cordero's response was unreasonable.  Simply because a person physically pushes or shoves an officer, it does not mean that a proverbial "blank check" is written as to the officer's response.  When force is appropriate, such force must be proportional in light of all the circumstances.  *Rowland v. Perry*, 41 F.3d 167, 173 (4th Cir. 1994).  While the application of force may have been appropriate at first, the circumstances clearly did not justify such a disproportionate response by Officer Cordero.  Furthermore, no circumstances justify a police officer continuing to beat a limp, 130-pound, 15-year-old boy upon his surrendered fall to the ground.  Considering this disproportionate and unyielding response, a jury could find that Officer Cordero's actions was unreasonable.  Accordingly, Defendant's motion for summary judgment as to Plaintiff's claim of excessive force in violation of the Fourth Amendment will be denied.[6]

---

[6] In coming to this decision, the Court again notes that the parties submitted a total of three affidavits in support and in opposition of this motion.  The Court did not engage in a credibility determination of the written statements, but instead, resolved all factual disputes in favor of the Plaintiff.  Nonetheless, even if this approach was not appropriate under the law, the Court is troubled by Defendant's explanation of the events--particularly how Plaintiff's jaw was broken despite Plaintiff only "bumping" into and "sliding along" the adjacent vehicle.  (Cordero Decl., 3).

Defendant argues that, even if Plaintiff's claim is meritorious, the doctrine of qualified immunity protects him from liability for claims of excessive use of force brought under § 1983. *Slattery v. Rizzo*, 939 F.2d 213, 216-17 (4th Cir. 1991). A police officer is entitled to qualified immunity so long as the officer's actions were objectively reasonable at the moment of the incident. *See Signman v. Town of Chapel Hill*, 161 F.3d 782, 786-87 (4th Cir. 1998).

As provided in the analysis above, at this stage, the Court cannot conclude that Officer Cordero's response was reasonable under the circumstances. An officer in Cordero's position cannot reasonably justify the repeated slamming of a 15-year-old boy's head into a car with so much force as to break the his jaw, especially after the boy has ceased to struggle and fallen to the ground. Thus, he is not entitled to qualified immunity.

B.  <u>Plaintiff's Tort Claims based upon Virginia law</u>

Defendant did not move this Court for summary judgment as to Plaintiff's tort claims based upon Virginia law. Instead, Defendant only moved the Court to dismiss these claims upon a grant of summary judgment on Plaintiff's federal law claim under § 1983. Since Defendant's motion for summary judgment was denied, these claims will remain before the Court. *See* 28 U.S.C. § 1367(c)(3).

At oral argument, Defendant moved for leave to amend their summary judgment to include a sovereign immunity defense as to these state law claims. This motion will be granted.

### IV. Conclusion

For the reasons previously stated, this Court finds that Defendant's Motion to Dismiss or, in the alternative, motion for Summary Judgment will be denied, and this matter will proceed to trial. Defendant's motion for leave to amend will be granted as to Plaintiff's state law claims.

An appropriate Order will issue.

February 5, 2007                    _____/s/_____
Alexandria, Virginia                          James C. Cacheris
                                    UNITED STATES DISTRICT COURT JUDGE