IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

JOSEPHINA VALLADARES,            )
    Next Friend of              )
    James Valladares            )
        v.                     )
                 )      1:06cv1378(JCC)
VICTOR CORDERO,                  )
                 )
    Defendant.                  )

# M E M O R A N D U M   O P I N I O N

Plaintiff Josefina Valladares ("Josefina") filed this action on behalf of her son, James Valladares ("James"), pursuant to 42 U.S.C. § 1983, alleging that Defendant Officer Victor Cordero ("Cordero") violated his constitutional rights by using excessive force while arresting him.[1]  Plaintiff also alleges claims of battery and negligence under Virginia law.  This matter comes before the Court on Defendant's renewed motion for summary judgment and Plaintiff's motions in limine.

## I. Background[2]

On Friday, December 8, 2005 at approximately 8:00 p.m., Officers Victor Cordero and Anthony Notarantonio ("Notarantonio") of Prince William County Police Department responded to a report

---

[1]To avoid confusion between Boris and James Valladares, the Court will refer to them by their first names.

[2]The facts recited here are derived from the Complaint; deposition testimony of James, Boris, and Josefina Valladeres, and additional declarations.  Where in dispute, the facts are construed in favor of Plaintiff. *See Porter v. United States Alumoweld Co.*, 125 F.3d 243, 245 (4th Cir. 1997).

of a domestic disturbance at 9414 Chatham Street in Manassas, Virginia.  Officer Cordero arrived first and met with Plaintiff Josefina Valladares and her son, Boris Valladares ("Boris"). Boris appeared to be heavily intoxicated and was arguing loudly with his mother.  Officer Cordero allowed the situation to resolve without his involvement, and as he began to leave, Officer Notarantonio arrived.  The officers talked briefly and walked out of the house.

Once outside the house, the officers noticed Josefina's younger son James leaning against a car in the driveway.  At the time, James was 15-years-old, approximately 5'3" tall, and 130 lbs.  The officers addressed James to discover his identity and determine whether he had any involvement in the domestic encounter.  Suddenly, Boris came out of the house and began yelling.

In response to Boris's disorderly conduct after emerging from the house, Officer Notarantonio approached Boris and a scuffle ensued.  Notarantonio, with Cordero's aid, attempted to place Boris under arrest for public intoxication. Boris fought the attempts of both officers to handcuff him, thereby resisting arrest.[3]  The officers sprayed Boris with

---

[3]At this point of the altercation, the accounts of the parties remain materially disputed.  Additionally, James has offered several contradictory statements of fact in recalling the incident.  However, because the instant motion is one for summary judgment, the Court will construe the facts as demonstrated in the record in the light most favorable to the Plaintiff. Questions of credibility and accuracy of James's accounts of the incident are

pepper spray and slammed him to the ground.  (James Dep. at 35).

James observed that his brother was bleeding from his head

striking the concrete, and that both officers were still on top

of him.[4]  At this moment, James approached the scuffle and tried

to push Officer Cordero off of Boris.  He did not punch Cordero,

but shoved him in the shoulder.  Cordero, at approximately 6'2"

and 250 pounds, turned to the 15-year-old, 130-pound boy and

attempted to grab him by his pants leg.  James kicked his legs so

the officer could not get hold of his pants, but Cordero grabbed

him by the hood of his sweatshirt and slammed him headfirst twice

into his mother's car and once into his stepfather's truck in an

attempt to subdue him. (James Dep. at 19, 42-46).  James fell to

the ground on his back, with the officer near his feet, and then

went "limp" and ceased fighting.[5]  (James Dep. at 50).  The

officer grabbed his legs, and then stood James up.  James did not

resist, but stood still.  Nevertheless, Cordero picked James up

from the ground and slammed him headfirst into the car two

---

better left for cross-examination during trial.

   [4]James's testimony is inconsistent regarding the time that Boris was
handcuffed.  He first testified that Boris was cuffed before he pushed Cordero
(James Dep. at 19), but later testified that Boris was subdued and laying on
his stomach with Officer Notarantonio atop of him, but he was not cuffed at
that time.  (James Dep. at 36).  For the purposes of summary judgment, the
Court will construe this disputed fact in the light most favorable to James,
and proceed as if Boris was handcuffed when James pushed the officer.

   [5]Officer Cordero disputes this claim and alleges that James was on the
ground face down, with the officer's weight on top of him, and speculates that
the jaw was broken at this time, not after standing him up.  This is a
material fact that remains in dispute.

3

additional times.[6]   (James Dep. at 55-57).   On the last impact, Cordero, with his weight behind him, slammed James face-first into the truck.   At this time, James heard a crack and felt his jaw break.   (James Dep. at 57).   With James now subdued, Cordero administered a taser stun to Boris.   An ambulance soon arrived and took James to the hospital, where a medical doctor confirmed that his jaw was broken.

On December 7, 2006, Plaintiff filed a Complaint in this Court alleging a violation of constitutional rights by using excessive force pursuant to 42 U.S.C. § 1983.   Plaintiff also alleges state law tort claims of battery and negligence, and seeks $100,000 in compensatory damages and $300,000 in punitive damages.   On January 5, 2007, Defendant filed a motion to dismiss or, in the alternative, for summary judgment as to Plaintiff's § 1983 claim, which was denied.   The Court granted Defendant leave to amend the motion to address Plaintiff's state law claims.   On March 8, 2007, the Court dismissed state law claims of ordinary negligence, but upheld claims of battery and gross negligence. On July 19, 2007, Defendant filed a renewed motion for summary judgment.   This motion is currently before the Court.

---

[6]Officer Cordero disputes this claim and asserts that Plaintiff continued to fight with Cordero, and that he "pulled" James along the vehicle.

## II. Standard of Review

Summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Applications & Serv., Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996)(citations omitted).  In reviewing the record on summary judgment, the Court is required to resolve all genuine disputes as to any material facts in favor of Plaintiff, the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).[7]

## III. Analysis

A) <u>Motion for Summary Judgment on the Excessive Force Claims</u>

Defendant first argues for summary judgment on the grounds that Officer Cordero's actions did not violate Plaintiff's Fourth Amendment right against unreasonable seizure, and even if a constitutional violation occurred, Officer Cordero

---

[7]In a supplemental motion for summary judgment, Defendant argues that under *Massie v. Firmstone,* 114 S.E. 652 (Va. 1922), James is "not allowed to rely upon the arguably more favorable version of this event and ask the Court to ignore James' clear statement of fact ... that he was kicking at Officer Cordero."  (Def.'s Supp. Mot. at 2).  This assertion is wholly incorrect.  As the Fourth Circuit has held, *Massie* is "totally inapplicable to the determination of a motion for summary judgment in a federal district court."  *Utility Control Corp. v. Prince William Const. Co., Inc.,* 558 F.2d 716, 719 (4th Cir. 1977); *see also In re LCS Homes, Inc.,* 103 B.R. 736, 751 (E.D. Va. 1989)("The *Massie* doctrine is not a federal rule of pleading or procedure, but rather a state common law proposition ... [that] does not apply here.").  Thus, Defendant's reliance upon *Massie* is misplaced, and the Court will continue according to the Federal standard for summary judgment, which requires the Court to take the facts in the light most favorable to the non-movant.

is protected from suit by qualified immunity.  To address these issues, the Court must conduct a twofold inquiry:  first it must determine if there was a violation of a constitutional right; second, whether that right was clearly established at the time of the events at issue or if qualified immunity protects the officer from suit.  *Saucier v. Katz,* 533 U.S. 194, 201 (2001).

1) <u>Fourth Amendment Violation</u>

The Court will first consider whether, taking the facts in the light most favorable to the Plaintiff, there was a constitutional violation arising from the use of excessive force. "The Fourth Amendment prohibition on unreasonable seizures bars police officers from using excessive force to seize a free citizen." *Jones v. Buchanan,* 325 F.3d 520, 527 (4th Cir. 2003). In analyzing an excessive force claim, courts must determine whether an officer has used excessive force to effect a seizure based on a standard of "objective reasonableness." *Bailey v. Kennedy,* 349 F.3d 731, 743 (2003) (quoting *Graham v. Connor,* 490 U.S. 386, 399 (1989)).  To make this reasonableness determination, a court must "weigh the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* (quoting *Jones,* 325 F.3d at 527).  The Court's focus should be on the circumstances at the moment force was used, and mindful of the fact that officers in the field must make split decisions and

6

are not afforded the luxury of armchair reflection. *Elliot v. Leavitt,* 99 F.3d 640, 642 (4th Cir. 1996). This test requires a determination of the reasonableness of an officer's actions and is not capable of precise definition or mechanical application. Rather, it requires careful attention to the facts and circumstances of each particular case. *Id.* (quotation marks omitted). Those facts and circumstances include: (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Graham v. Connor,* 490 U.S. 386, 396 (1989). The Fourth Circuit has also held that the extent of the plaintiff's injury is a relevant consideration. *Jones,* 325 F.3d at 527. The Court will address each *Graham* factor in turn as applies to the instant action, and then determine whether the facts taken in the light most favorable to Plaintiff support a cause of action for excessive force.

The first *Graham* factor does not assist Plaintiff in this case. The record clearly establishes the very serious offense of assaulting a police officer, which the Plaintiff does not contest. While it is true that James caused no physical harm to the officer and merely "shoved" him rather than punching him or hitting him with an object, Fourth Circuit precedent focuses on the existence of criminal activity rather than the extent of

7

harm caused by that activity.  *Compare Wilson v. Flynn,* 429 F.3d 465, 468 (4th Cir. 2005)(holding that despite no showing of physical harm, the assault "still constituted criminal activity") *w. Jones,* 325 F.3d at 528 *and Bailey,* 349 F.3d at 743 (both cases finding the first *Graham* factor to favor the plaintiffs because no crime had been committed when the police used force to subdue them).  Given that James concededly assaulted a police officer, the Court cannot find that the first factor weighs in his favor.

The second *Graham* factor does weigh in favor of the Plaintiff, because no reasonable threat was posed to the safety of the officers by the suspect, in this case an unarmed, 130-pound boy of fifteen years.  There was an initial threat when James pushed the officer in an effort to "get him off his brother," whom he perceived was already restrained and on the ground bleeding.[8]  However, the contact was described as a "shove;" he did not punch the officer, who was nearly twice his size, brandish a weapon of any sort, or make any attempt to reach for the officer's weapon.[9]  The record also indicates that after

---

[8]It is notable that Defendant's factual account regarding Boris is misleading.  Defendant's assertion that "James makes clear that Boris was not handcuffed until after he was tasered" is incorrect.  While James's testimony is conflictive, and at one point does make this assertion, he also offers evidence that Boris was cuffed and fully subdued at the time he pushed the officer.  (James Dep. at 18-19)("they threw him on the ground and ... they had him like cuffed and everything and then Cordero like had his knees on him").

[9]Defendant argues that there was an actual and immediate threat of either James or Boris grabbing an officer's gun.  However, nothing in the record supports an attempt by either brother to grab a weapon.  Furthermore, by one account, at the time James shoved Officer Cordero, Boris had been pepper sprayed and was laying on his stomach, with Officer Notarantonio on top

the initial contact, James was on the defensive.  The "kicks" as described by Plaintiff were not offensive attacks on the officer, but rather attempts to keep the officer from grabbing hold of his pants.  Perhaps most importantly, after the officer initially slammed him into both vehicles and he landed face up on the ground, James ceased moving and, as he described, "went limp." (James Dep. at 50).  This is precisely when the alleged excessive force occurred:  the officer stood him up, and despite his lack of resistance, slammed James face first into the vehicles two more times, breaking his jaw.  At this point, there was no reasonable threat posed to the officer or anyone else by James Valladares--a 15 year old boy of 130 pounds who had gone "limp" and submitted to a 250 pound officer of the law.

     The facts of this case are very analogous to *Kane v. Hargis,* 987 F.2d 1005, 1008 (4th Cir. 1993).  In that case, the Fourth Circuit found a genuine issue of material fact precluding summary judgment on the issue of reasonableness, when a 200-pound officer pinned a 100-pound suspect to the ground and then pushed her face into the pavement.[10]  Like *Kane,* this case also involved

_____

of him, and Officer Cordero's own declaration mentions nothing about this hypothetical concern that James or Boris would reach for a gun.  (Cordero Decl.).  Rather, Defendant raises this unsupported argument for the first time in a legal brief, months after the fact.

     [10]The Court is not persuaded by Defendant's oral arguments that *Wilson v. Flynn* is more analogous to the instant action that *Kane*.  In *Wilson*, the defendant was an intoxicated, grown man who had recently assaulted his wife, and the officers involved were clearly aware that a gun was located in the house where the struggle occurred.  429 F.3d at 466-68.  Put differently, the defendant in *Wilson* presented a far greater and more reasonable threat to the

an officer's use of force on a fully restrained suspect, half the officer's size, after initial resistance of arrest had ceased. Also like *Kane,* the factual accounts in this case are highly disputed, but taking the facts in the light most favorable to James yields the same conclusion reached by the Fourth Circuit: it would have been "apparent to a reasonable officer" that, after subduing a suspect half the officer's size, no threat was posed warranting the additional slamming of the suspect's head into a vehicle with such force as to break his jaw. *Id.*  Thus, the second *Graham* factor weighs in the Plaintiff's favor.

The *Kane* holding also leads this Court to find that the third *Graham* factor weighs in favor of the Plaintiff.  Like the plaintiff in *Kane,* while James initially resisted arrest, he ceased resistance and submitted to the officer prior to the use of excessive force.  *Id.*  Instead of pinning him to the ground, the officer stood James up, but nonetheless he did not resist. Rather, he stood still expecting to be handcuffed, under the full control of a police officer twice his size.  As noted above, it was at this point that the use of excessive force occurred, and the Court finds that, taking the facts in the light most favorable to the Plaintiff, it was objectively unreasonable for Officer Cordero to slam James twice head-first into two vehicles with sufficient force to break his jaw after submission and the

_____

officers than James Valladares.

10

cessation of resistance.[11]  Accordingly, the Court finds that this factor weighs in favor of the Plaintiff.

Finally, the "extent of the plaintiff's injury is also a relevant consideration." *Jones,* 325 F.3d at 527.  In this case, James suffered a broken jaw as well as cuts and abrasions. These injuries are serious, particularly in light of James's actions, as a shove on the shoulder is not typically countered by a broken jaw.  Thus, this factor also weighs in favor of Plaintiff.  In sum, the Court finds that, while the Plaintiff did assault an officer, a totality of the *Graham* factors and other relevant considerations support a finding that a violation of James's Fourth Amendment right against unreasonable seizure occurred.  *See Kane,* 987 F.2d at 1008; *see also Young v. Prince George's County,* 355 F.3d 751, 757-58 (4th Cir. 2004); *Bailey,* 349 F.3d at 744.  Accordingly, the Court finds that Plaintiff has proffered evidence fo a violation of a constitutional right, and will proceed to the qualified immunity analysis.

2) <u>Qualified Immunity</u>

Having determined, for the purposes of summary judgment, that Officer Cordero violated James's Fourth Amendment right to be free from unreasonable seizures, the Court will now

---

[11]Again, this case is distinguishable from *Wilson,* where the officers ceased violence when the plaintiff was restrained and under control.  429 F.3d at 467.  Even though Plaintiff was not handcuffed when the violence occurred in this case, the facts in the light most favorable to him suggest that he had ceased resisting, was "limp" and under full control of the officer.

turn to whether the right was clearly established at the time of the violation.  The relevant, dispositive inquiry in determining whether a right is clearly established is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier,* 533 U.S. at 202.  The inquiry focuses on "whether the state of law at the time of the events at issue gave the officer fair warning that his alleged treatment of the plaintiff was unconstitutional." *Jones,* 325 F.3d at 531 (internal quotation marks and citation omitted).  "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987) (citation omitted).  The Fourth Circuit and other courts have consistently held that officers using "unnecessary, gratuitous, and disproportionate force to seize a secured, unarmed citizen, do not act in an objectively reasonable manner, and thus, are not entitled to qualified immunity." *See Bailey,* 349 F.3d at 745; *see also Rowland v. Perry,* 41 F.3d 167 (4th Cir. 1994); *Kane,* 987 F.2d at 1006-08; *Mayard v. Hopwood,* 105 F.3d 1226, 1227-28 (8th Cir. 1997)(denying qualified immunity when an officer slapped and punched a suspect after retraining him, even though he had resisted arrest, kicked, hit and shouted at the officer prior to being restrained).

12

As stated above, taking the facts in the light most favorable to the Plaintiff, the Court cannot find that Officer Cordero acted reasonably as a matter of law.  The suspect was an unarmed, 130-pound boy, half the officer's size.  Although he had shoved the officer and initially resisted arrest, he had since been fully subdued and restrained, after being slammed into two automobiles and thrown onto the ground.  While he was not yet handcuffed, he stopped resisting and "went limp," allowing the officer to stand him up without the slightest resistance.[12]  At this point it would be apparent to an objectively reasonable officer that the situation was under control, and that any further acts of violence were both unnecessary and unlawful. Nonetheless, Officer Cordero made a conscious choice to act unlawfully, and slammed James's head into a vehicle two more times, with enough force to break his jaw.  This was not a "split-second" reaction as Defendant characterizes it, but a conscious use of force after the situation was under control. Therefore, based on the record for summary judgment, the Court finds that this activity was not objectively reasonable, but rather constituted an "unnecessary, gratuitous, and

---

[12]Again, it is important to note that these facts are in dispute, and Officer Cordero claims that James was kicking at him prior to standing him up, and he had no way of knowing that James had decided to stop resisting at that time.  The veracity of these differing factual accounts will be determined at trial.

disproportionate" use of force.  Accordingly, qualified immunity will be denied.

    B) <u>Summary Judgment on the State Law Claims</u>

       Defendant argues for summary judgment on the state law claims on the ground that recovery is barred by Plaintiff's contributory negligence.  Under Virginia law, contributory negligence generally bars recovery in tort, with the exception of situations where the Defendant has committed an intentional tort or where the Defendant is willfully and wantonly negligent.  *See Williams v. Harrison*, 497 S.E.2d 467, 469 (Va. 1998); *Griffin v. Shively*, 315 S.E.2d 210 (Va. 1984).  Thus, recovery is clearly not barred under this doctrine for Plaintiff's claims of battery, an intentional tort.  Since there is no existent claim for willful and wanton negligence, the Court will turn to Plaintiff's claim for gross negligence.

       Like ordinary negligence, contributory negligence will bar recovery in cases where the Defendant acted in a grossly negligent manner.  *See Bane v. Mayes*, 65 Va. Cir. 258, 259 (Va. Cir. Ct. 2004).  A defendant wishing to "rel[y] upon contributory negligence as a defense ... has the burden of proving by the greater weight of the evidence not only that the plaintiff was negligent, but also 'that his negligence was a proximate cause, a direct, efficient contributing cause of the accident.'"  *Karim v. Grover*, 369 S.E.2d 185, 186 (Va. 1988)(citing *Burks v. Webb,*

14

*Administratrix*, 99 S.E.2d 629, 638 (Va. 1957) and *Whitfield v. Dunn*, 117 S.E.2d 710, 714 (Va. 1961)).  Therefore, summary judgment is appropriate on the issue of Defendant's gross negligence if there is no genuine issue of material fact as to whether Plaintiff was also negligent and that his negligence was a proximate cause of the accident.  Under Virginia law, "[t]he proximate cause of an event is that act or omission which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces the event, and without which that event would not have occurred." *Doherty v. Aleck*, 641 S.E.2d 93, 97 (Va. 2007)(quoting *Jenkins v. Payne*, 465 S.E.2d 795, 799 (1996)).

Even taking the facts in the light most favorable to Plaintiff, this Court has no doubt that James's act of shoving Officer Cordero and interfering with Boris's arrest was negligent.  That negligent act was the cause of the police officer's attempt to subdue James, and the ensuing struggle and injury would not have occurred absent James' initial negligence.  Furthermore, it was foreseeable that the negligent act of shoving a police officer could result in physical harm to the assaulter.  Therefore, the Court finds that Plaintiff's contributory negligence was the proximate cause of the incident and thus that he is barred from recovery for his state law claims of gross

15

negligence.[13]  Accordingly, the Court will grant summary judgment on the state law claim of gross negligence.

Defendant also argues for summary judgment on the battery claim on the ground that Defendant acted reasonably and within his right to use reasonable force to protect his and his partner's life.  The Court finds this argument lacking in merit.  In order to recover for battery, a plaintiff must show that the defendant "intended, through wantonness, malice, or anger, to cause harmful or offensive contact to [Plaintiff]."  *Coppage v. Mann*, 906 F. Supp. 1025, 1050 (E.D. Va. 1995)(citing *Paramont Mining Corp. v. NLRB*, 631 F.2d 346 (4th Cir. 1980), *Crosswhite v. Barnes*, 124 S.E. 242 (Va. 1924)).  Officer Cordero's action of slamming the small teenager's head into the car multiple times, even when James had ceased to resist arrest, demonstrates the possibility of wantonness, malice, or anger.

While Defendant's argument seemingly confuses the applicable language of a § 1983 claim defense with that of state law battery, it appears to be an invocation of self-defense and defense of others.  Neither argument merits summary judgment in this case.  As explained with respect to the § 1983 claim, nothing in the record supports a reasonable belief that the

---

[13]Defendant also argues that his conduct did not amount to gross negligence, entitling him to sovereign immunity as to state law claims of ordinary negligence.  Because summary judgment will be granted for Defendants on the question of gross negligence due to Plaintiff's contributory negligence, further inquiry into whether or not Defendant was grossly negligent is unnecessary.

officer's life or the life of his partner was in danger, and the alleged battery occurred after the officer had defended himself and subdued James.  Especially considering the vast size difference between Officer Cordero and James, a reasonable trier of fact could find that the Officer intended to harm James and exercised gratuitous force against him, after he ceased to pose any threat to either officer.  Therefore, summary judgment will be denied as to the dismissal of the intentional tort claim for battery.

     C) <u>Punitive Damages</u>

       Finally, Defendant asks the Court to dismiss any claims for punitive damages.  As basis for dismissal, Defendant argues that "the imposition of punitive damages against Officer Cordero as an individual is tantamount to awarding punitive damages against a municipality," and further states that there has been no showing of "evil intent."  (Def.'s Mot. at 22).  Defendant's argument lacks merit for two reasons.  First, Defendant's reliance upon *Kentucky v. Graham,* 473 U.S. 159, 166 (1985) to assert that punitive damages may not be brought against an individual officer is misguided and directly contradictory to the holding in that case.  In *Graham*, the Supreme Court directly stated that while "punitive damages are not available under § 1983 from a municipality, [they] *are available in a suit against an official personally.*"  Id. (internal citations

17

omitted)(emphasis added).  Second, Defendant relies upon *Smith v. Wade,* 461 U.S. 30, 57 (1983) to state that punitive damages are also precluded because no "evil motive or intent" was shown on the part of Officer Cordero.  (Def.'s Mot. at 22).  Again, Defendant's reliance is misguided, as it is based upon a dissenting opinion's discussion of the common law as existed in 1871, prior to the enactment of § 1983.  *Id.* (Rehnquist, J., dissenting).  To the contrary, the majority's holding in the case specifically rejected the actual intent standard and stated that a plaintiff may also claim punitive damages when an individual acts with reckless or callous indifference to another's federally protected rights.  *Id.* at 55.  Thus, Plaintiff's arguments lack merit.  Furthermore, taking the facts in the light most favorable to the non-movant, Officer Cordero's behavior could amount to a reckless indifference to James's federally protected right against unreasonable seizure.  Thus, the Court will not dismiss the claims for punitive damages.

   D) Plaintiff's Motions in Limine

        For many of the categories of evidence Plaintiff moves to exclude, Plaintiff argues generally that the documents and witnesses should be excluded for being hearsay and/or irrelevant and/or unduly prejudicial.  As an initial matter, hearsay evidence is not admissible unless it falls within one of the listed exceptions.  Therefore, any objection Plaintiff has to

18

this evidence on hearsay grounds may be valid, but since the hearsay objections are not specifically articulated in the motion, the Court will rule upon the objections as they arise at trial.  Similarly, the Court cannot make a determination of the relevant probative value and prejudice of evidence or witnesses without information as to what that evidence would reveal, particularly for evidence Defendant intends to offer only in response to certain issues Plaintiff may put in his case in chief.

1. <u>School Records and Personnel</u>

Plaintiff seeks to have all testimony regarding James's school records, including that of teachers, principal, and other personnel, excluded on the grounds that they would be irrelevant and unduly prejudicial, and inadmissible hearsay.  Defendant argues that such testimony and records may be relevant and admissible if Plaintiff places certain issues in evidence during his case in chief.  Ruling on whether school records and personnel testimony should be excluded is reserved until trial.  Accordingly, Plaintiff's motion in limine as to school records will be denied.

2. <u>Police Records and Personnel</u>

Plaintiff requests that testimony from any police officers and employees who did not witness the incident, along with any police documents, be excluded as and unfairly

prejudicial and inadmissible hearsay, and because lay witnesses cannot offer opinion evidence.  Defendant argues that most of the police officers will not testify as experts and may have relevant and admissible testimony, depending on Plaintiff's case in chief. Defendant further argues that other officers took statements from Plaintiff which are admissible as party admissions, and that the one officer whose testimony may be offered as an expert has been identified as such.

Without further information about what would be included in the testimony and documentary evidence or its probative value, no ruling can be made at this time as to whether it would cause unfair prejudice or as to whether it is inadmissible hearsay.  Plaintiff can be assured that no witness will be allowed to offer inappropriate opinion evidence in this Court without being qualified as an expert witness.  However, ruling on whether police records and personnel testimony should be excluded will be reserved until trial.  Thus Plaintiff's motion to exclude police records and personnel will also denied.

3. <u>Insurance</u>

Both Plaintiff and Defendant agree that there is no need to introduce insurance information into evidence. Therefore, this Court will grant Plaintiff's motion to exclude insurance information.

20

4. <u>Police Expert John C. Hall</u>

Plaintiff argues that the opinions and testimony of expert witness John C. Hall ("Hall") should be excluded because they are simply lay opinions that involve no expertise unique to an expert.  Defendant counters that Hall will testify as to the perspective of a reasonable officer, since a layperson trier of fact cannot properly assess the specialized procedures of a police officer.

The Fourth Circuit has held that "in an excessive force case, the relevant standard of conduct used to assess reasonableness 'is not defined by the generic - a reasonable person - but rather by the specific - a reasonable officer.'" *Clem v. Corbeau*, 98 Fed. Appx. 197, 201 (4th Cir. 2004)(quoting *Kopf v. Skyrm*, 993 F.2d 374, 378 (4th Cir. 1993)).  Therefore, "the reasonableness inquiry in an excessive force case can involve 'specialized knowledge,' which an expert witness can assist the jury in understanding."  *Id.* (referencing Fed. R. Evid. 702).  Because a reasonable officer's knowledge and training is different than that of a reasonable person, the Fourth Circuit has held that it is an abuse of discretion to "exclud[e] expert testimony 'as to the prevailing standard of conduct for the use' of .. 'specialized tools' of police work." *Id.* (quoting *Kopf,* 993 F.2d at 379).  However, when the testimony is limited to the question of the reasonableness of force in a

21

particular case and does not "provid[e] specialized knowledge on 'obscure skills,'" it is not an abuse of discretion for the trial court to exclude it.  *Id.*

        In the instant case, the testimony of the expert is being offered to explain how a reasonable officer would act in the circumstances of the incident at issue.  Part of that testimony relates to a reasonable officer's perception of the nonverbal behavior of an arrestee, particularly what is understood to constitute a surrender.  Insofar as the testimony relates to such specialized knowledge, it is admissible, although the Court notes that testimony merely giving the expert's "particular interpretations of the contested facts, as to the reasonableness of [defendant]'s use of force" is improper, because it risks "'supplanting a jury's independent exercise of common sense' and its role of determining the facts."  *Id.* (quoting *Kopf,* 993 F.2d at 377).  Therefore, insofar as the testimony of Defendant's expert is not merely opinion evidence, it is admissible, and Plaintiff's motion in limine will be denied.

        5. <u>Criminal Case Records of James and Boris Valladares,</u>
           <u>Probation Records of James Valladares</u>

        Plaintiff argues that the criminal case records of James and Boris Valladares and the probation records of James Valladares are irrelevant, unfairly prejudicial, and inadmissible hearsay.  These records contain a number of statements which

22

could be admissible as non-hearsay party admissions or as evidence of the mental states of the officers during the incident.  Insofar as these statements are relevant and the probative value of the criminal and probation records outweigh their prejudice, they may be admissible.  Thus, the Court is not currently in a position to exclude all such evidence, and will reserve judgment until trial.  Therefore, Plaintiff's motion in limine regarding the criminal case records of James and Boris Valladares and the probation records of James Valladares will be denied.

### III. Conclusion

For the foregoing reasons, the Court will deny Defendant's motion for summary judgment on Plaintiff's claims for excessive force under § 1983, state law battery, and punitive damages, but grant Defendant's motion on Plaintiff's claim for gross negligence.  The Court will deny Plaintiff's motion in limine to exclude school records and personnel, police records and personnel, and Hall's expert testimony.  The Court will grant Plaintiff's motion in limine to exclude insurance information.  An appropriate Order will issue.


August 27, 2007                    _____/s/_____
Alexandria, Virginia                       James C. Cacheris
                                   UNITED STATES DISTRICT COURT JUDGE